IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:17CR3047 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| JASON D. MCCAIN, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

     Magistrate Judge Zwart has issued a Findings and Recommendation (Filing 35) that Defendant's Motion to Suppress (Filing 22) be denied. Defendant has filed an objection (Filing 43) to the Findings and Recommendation, arguing that a state trooper did not have reasonable suspicion to initiate a "felony stop"[1] of Defendant's vehicle on April 22, 2017, which led to Defendant's arrest.

     Defendant argues that Trooper Rutan, who stopped Defendant's white Ford Explorer on I-80, did not have reasonable suspicion to do so; that Judge Zwart incorrectly used video clips of a white Ford Explorer from a February 24, 2017, robbery at the same US Bank to infer "that the same Ford Explorer was used in the April 22nd robbery"; and that Rutan was not credible when he testified that he could see part of a bike wheel through the vehicle's heavily tinted windows while closely following Defendant's vehicle. (Filing 44 at CM/ECF p. 2.)

---

[1] The trooper testified that he did not stop Defendant's vehicle for a traffic violation; rather, it was a "felony stop" based on the trooper's suspicion that the person driving the car may have been a sought-after bank robber. (Filing 34, Hearing Tr. 75:25-76:9 (hereinafter "Tr.").)

## A. The Stop

After thorough review of the hearing transcript and exhibits, the Magistrate Judge's Findings and Recommendation, and the parties' briefs, I conclude that the facts of which Trooper Rutan was aware at the time he stopped Defendant gave rise to a reasonable suspicion that Defendant was involved in criminal activity. Specifically, at the time Rutan stopped Defendant's vehicle, Rutan had heard two broadcasts at approximately 9:30 a.m. from the Lincoln Police Department ("LPD") that a black male had robbed a US Bank at 56th and Highway 2, the suspect left the bank on a bike, and a white 2005 Ford Explorer might be involved with the robbery; Rutan had observed a white 2005 Ford Explorer driving toward I-80 in the direction of Omaha approximately 20 minutes after he heard the 9:30 a.m. broadcast; from being a long-time Lincoln resident, Rutan knew it took approximately 20 minutes to drive from the US Bank at 56th and Highway 2 to I-80; he saw a black male driving the vehicle at ten miles under the speed limit for no apparent reason; and, from 20 yards behind the Explorer, Rutan saw a bike wheel in the back-seat area of the vehicle. (Tr. 59:23-64:1.) After Rutan relayed this information to dispatch, he was told that the Explorer that was thought to be connected to the robbery had white painted bumpers and black door handles. Rutan confirmed that Defendant's vehicle had those two features, waited for other troopers to "catch up" with him, and then pulled Defendant's Explorer over. (Tr. 64:4-25.)

The Eighth Circuit Court of Appeals has made clear that this is enough to justify the stop of Defendant's vehicle:

> We have several times stated that if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information. Moreover, a person's physical appearance and location relative to a known crime scene can provide an objectively reasonable

basis for an officer to stop that person, even where the officer's observation of the person is brief and from a distance and there had been no traffic violations or any other independent reason to stop the vehicle.

*United States v. Farnell*, 701 F.3d 256, 262 (8th Cir. 2012)(internal quotations and citations omitted).

## B.  The Bulletin

Defendant also challenges the basis for the LPD's bulletin (which Rutan heard) that a white 2005 Ford Explorer like the one connected to the February 24, 2017, robbery might be involved with the April 22 robbery. The testimony and evidence presented at the hearing on Defendant's Motion to Suppress reveal an extensive police investigation following the February 24 robbery, including footprints in the snow leading from the bank to a nearby neighborhood; two different sets of security-camera footage of a white 2005 Ford Explorer in the nearby neighborhood that arrived shortly before the robbery and left shortly after the robbery; the identification of approximately 110 similar white Ford Explorers that were registered in Lincoln and Omaha, and the observation and elimination of 90 of those vehicles because they did not have painted white bumpers and black door handles, as did the suspicious vehicle from the February 2017 robbery; and US Bank tellers' testimony that the April robbery occurred at the same time and at the same location as the February robbery, and they believed the same person committed both robberies based on the robber's mannerisms, voice, height, weight, race, type of clothing, and general build.

Based on this extensive, specific information—as opposed to a mere "hunch"—the LPD issued a broadcast reporting the April 22, 2017, robbery and advising that a white Ford Explorer could be involved. I agree with the Magistrate Judge that the LPD had reasonable suspicion to infer—and to issue a bulletin accordingly—that a white 2005 Ford Explorer like the one involved in the February

US Bank robbery may also have been involved in the April 22, 2017, robbery of the same bank.

## C.  Credibility of Rutan's Testimony Regarding Bike Wheel

Finally, there is no reason to question Trooper Rutan's claimed observation, through tinted windows, of a bike wheel in Defendant's back seat when he was following Defendant's vehicle from an approximate distance of 20 feet. *United States v. $90,000 in U.S. Currency*, No. CIV 07-4744, 2010 WL 1379777, at \*13 (D. Minn. Mar. 31, 2010) (district court would not hold hearing to make its own credibility determinations after magistrate judge held hearing on motion to suppress and "properly found the facts of the case and made appropriate determinations about the credibility of the witnesses"); *United States v. Longs*, No. 07-189(16), 2008 WL 2357858, at \*3 n.2 (D. Minn. June 5, 2008) ("[o]nly in rare cases will this Court revisit" magistrate judge's credibility determination when magistrate judge observed the witnesses); *United States v. Taylor*, No. 04-219, 2004 WL 2066850, at \*6 (D. Minn. Aug. 17, 2004) (when magistrate judge credited testimony of defendant rather than police officer after thorough evidentiary hearing, court had "no reason to revisit the Magistrate Judge's credibility determinations") (citing *United States v. Marshall*, 609 F.2d 152, 155 (5th Cir. 1980) (only in a "rare case" should a district judge resolve credibility choices in a manner contrary to recommendation of magistrate who heard witnesses' testimony); *Bennerson v. Joseph*, 583 F.2d 633, 641 (3d Cir.1978) (district court should not displace magistrate's view of witnesses' credibility)).

Accordingly, after de novo review, and because Magistrate Judge Zwart has thoroughly and correctly analyzed the facts and the law, I adopt the judge's Findings and Recommendation.

IT IS ORDERED:

1.    The Findings and Recommendation (Filing 35) is adopted;

2.      Defendant's objection (Filing 43) to Judge Zwart's Findings and Recommendation is denied; and

3.      Defendant's motion to suppress (Filing 22) is denied.

DATED this 1st day of November, 2017.

                                        BY THE COURT:
                                        s/ *Richard G. Kopf*
                                        Senior United States District Judge